William E. Sparks
JONES WALKER LLP
Wyoming Bar No. 6-4501
10001 Woodloch Forest Drive, Ste. 350
The Woodlands, TX 77380
Telephone: (281) 296-4552
Facsimile: (281) 296-4575
wsparks@joneswalker.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| OVINTIV INC.,<br><br>     Petitioner,<br><br>vs.<br><br>U.S. BUREAU OF LAND MANAGEMENT, U.S. DEPARTMENT OF THE INTERIOR, and ALFRED ELSER, in his official capacity as the Wyoming Deputy State Director for the Wyoming Bureau of Land Management,<br><br>     Respondents. | CASE NO.: 1:25-cv-00264-SWS |

**RESPONSE TO MOTION TO INTERVENE**

Ovintiv Inc. ("Ovintiv") submits this Response in opposition to the Motion to Intervene filed by Western Organization of Resource Councils, Center for Biological Diversity, and WildEarth Guardians (collectively the "CBD").

## I. INTRODUCTION AND BACKGROUND

On November 13, 2025, Ovintiv filed a Petition for Review challenging the Bureau of Land Management's ("BLM") Decision Denying Ovintiv's State Director Review, Written Orders and Incidents of Non-Compliance ("INCs") related to the various BLM requirements including the proposed plugging and abandonment of the Burke Ranch #9-17, Burke Ranch #5, Burke Ranch #7, and Burke Ranch #9 oil and gas wells (collectively the "Wells"), drilled by various operators within the Burke Ranch Unit WYW-109445X on federal oil and gas leases WYW-100546, WYW-002118, WYW-002046, and WYC-081317B (collectively the "Leases"). *See* Ovintiv's Original Petition, Doc. 1, pgs. 2, 6, 8. Specifically, Ovintiv challenged these BLM actions and orders as arbitrary and capricious because Ovintiv never operated the Wells or owned any interest in the Leases, BLM failed to ensure proper bonding for the current operator and owners, and Ovintiv has no right to access the Wells as the <u>surface is owned by private individuals</u>, not BLM. *Id.* at 13-15. Ovintiv also challenged BLM's regulations as applied to the underlying decisions and agency actions at issue, 43 C.F.R. § 3106.72(b) (2024) and 43 C.F.R. § 3106.7-2(b) (2023)[1], as exceeding the authority granted under the Mineral Leasing Act ("MLA"), 30 U.S.C. § 181, et seq. *Id.* at 12-13.

CBD now seeks to intervene in this action to align with the Respondent, BLM, and defend BLM's regulation against vacatur. *See* Doc. 6; Doc. 6-1. However, CBD's Motion is procedurally defective because it failed to file an Answer or other "pleading that sets out the claim or defense

---

[1] Ovintiv does not admit that the 2023 and 2024 BLM regulations are the proper regulations that BLM should have applied in this matter.  The regulations that BLM should have applied remain in dispute.

for which intervention is sought." *See* Fed. R. Civ. P. 24(c) (motions to intervene must "be accompanied by a pleading"). Thus, the Court should deny the Motion because CBD failed to comply with Rule 24(c). *See Hill v. Kan. Gas Serv. Co.*, 203 F.R.D. 631, 634 (D. Kan. 2001) ("The Court could, on these procedural grounds alone, deny [the] motion to intervene.").

Moreover, CBD fails to show a sufficient interest in the outcome of this litigation and inadequate representation of its interest by BLM. Specifically, CBD fails to demonstrate any interest in the Wells, Leases, or surrounding lands and shares an identical litigation objective with BLM, who is in the best position to defend its interpretation of the statute and its regulations. *See infra*, Parts II and III.

## II. CBD CANNOT MEET THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(A)

Pursuant to Federal Rule of Civil Procedure 24(a)(2), the Court must allow a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *See Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n*, 787 F.3d 1068, 1071 (10th Cir. 2017).

### A. CBD Cannot Show An Interest That Would Be Impaired By the Disposition of the Case

CBD fails to meet its burden because its interests consist of generalized environmental interests untethered to the discrete Wells, Leases, or lands at issue in this litigation. Further, CBD cannot establish an interest through its "record of advocacy," which is irrelevant in this type of claim.

2

**1. Intervenors must demonstrate more than a generalized interest in the proceeding**

While Rule 24 does not define the nature of the required "direct, substantial, and legally protectable interest[,]" it is clear that "a generalized public policy interest shared by a substantial portion of the population does not confer a right to intervene." *Bates v. Jones*, 904 F. Supp. 1080, 1084 (N.D. Cal. 1995); *Vermejo Park Corp. v. Kaiser Coal Corp.*, 998 F.2d 783, 790 (10th Cir. 1993). Further, parties cannot intervene solely to advance their view or opinion on a policy. *See Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90 (10th Cir. 1993).

Applying these standards, CBD fails to demonstrate a "direct, substantial, and legally protectable interest" in the "property or transaction in dispute." *Vermejo*, 998 F.2d at 791; Fed. R. Civ. P. 24(a)(2). Instead, CBD relies on broad environmental, public health, and public welfare concerns associated with orphaned oil and gas wells without identifying any concrete interest tied to the specific lands, Wells, or Leases at issue in this case. *See* Doc. 6, p. 5 (citing concerns about American taxpayers and landowners paying for reclamation and cleanup); p. 6-7 (citing concerns about air and water pollution and public safety).

The lands at issue are located on terminated oil and gas leases for oil and gas wells that are drilled from private surface owned by Owens Land and Livestock. Doc. 1, p. 7. BLM owns no interest in the surface of these lands, although the minerals are owned by the United States and managed by BLM. *Id*. CBD has alleged no interest in these private lands, Leases, or Wells that are the subject of this action. Nor has it alleged any interest in these private lands that would establish its right to use or enjoy any resources on these lands. Thus, CBD has failed to adequately establish a "direct, substantial, and legally protectable interest" in this action.

CBD's declarations also do not support its arguments for intervention. For example, the Declaration of Melissa Troutman—a resident of Pennsylvania—does not support CBD's interest

3

in this case because: (1) involvement in the future leasing of oil and gas is irrelevant because the relevant leases terminated (¶¶ 10, 11, 13); (2) issues with the Permian Basin are unrelated (¶ 12); (3) policy related to prior operators' liability (¶ 14-15) is irrelevant as Ovintiv was never an operator; (4) purported impacts from greenhouse gases are unconnected because the Wells at issue are not producing and should be plugged by previous operators (¶¶ 4-9, 16); (5) advocacy and comments on 2023 rule proposals, 43 C.F.R. 3106.72, is irrelevant as this version of the regulation does not apply to Ovintiv's challenge to 2023 INCs and subsequent BLM orders; and (6) advocacy towards responsible oil and gas on public lands is irrelevant as there are no public lands involved. Doc. 6-2 at 33-42. Simply put, there is no concrete threat of harm to CBD's interest by forcing BLM to apply its regulations to the actual operators and owners of the Leases and Wells on private lands.

To overcome this massive failure, CBD attempts to establish an interest by generally alleging an interest in the environment, BLM policy, and oil and gas production in Wyoming. These arguments fail. In a separate recent action, Center for Biological Diversity and WildEarth Guardians, expressly recognized and endorsed that these interests are insufficient for intervention. *See Citizens Caring for the Future, et. al. v. Haaland*, No. 2:23-cv-00060 (N.M. Dist. Oct. 23, 2024), Doc. 49, attached as **Exhibit 1**. Thus, according to its own theory, CBD must show more than an abstract interest in BLM's policy surrounding its federal leasing framework, which it fails to achieve. *See id.; see* Doc. 6-1; 6-2. Absent any connection with the private surface of the lands, Wells, or Leases, CBD and its members will remain unaffected by the outcome of this litigation.

### 2. <u>A "record of advocacy" is not sufficient to establish a cognizable interest in this case</u>

In an effort to characterize its public policy concerns as a legally protectable interest, CBD relies on Tenth Circuit decisions suggesting that a prospective intervenor's "record of advocacy"

may, in certain circumstances, establish a legally cognizable interest under Rule 24(a)(2). *See* Doc. 6-1, pgs. 5-7 (citing *Western Energy All. v. Zinke*, 877 F.3d 1157, 1165-66 (10th Cir. 2017); *Coal. of Ariz./N.M Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996)). These opinions explain that an organization has a protectable interest in preserving environmental protections or policy reforms that it helped persuade the agency to adopt. *See e.g., Coal. of Ariz./N.M Cntys.*, 100 F.3d at 841. However, these cases do not suggest that *any* history of advocacy is sufficient to establish an interest in *any* type of lawsuit.

Here, CBD's advocacy falls far short of the efforts that warranted intervention in other cited cases. In *Zinke*, for example, the environmental advocacy groups spent years negotiating and litigating the Leasing Reform Policy challenged in that case, while CBD, here, does not allege involvement in the lands, Leases, Wells, or the challenged regulation. *See Zinke*, 877 F.3d at 1165. Instead, the declarations submitted with CBD's Motion largely describe advocacy concerning other, unrelated aspects of BLM's leasing program. *See* Doc. 6-2.

Likewise, the nature of Ovintiv's claims renders CBD's asserted "record of advocacy" irrelevant. Ovintiv primarily asserts as-applied claims directed at BLM's effort to impose liability on Ovintiv for specific wells that it never owned or operated. *See* Doc. 1, pgs. 2-3, 13-15. Although Ovintiv also challenges BLM's authority to promulgate and enforce 43 C.F.R. § 3106.72(b) under the MLA, that challenge does not target BLM policies governing discretionary leasing or land management decisions involving environmental assessments. *Compare* Doc. 6-1, pgs. 2, 5-7 (discussing 43 C.F.R. § 3106.72(b)) *with Zinke*, 877 F.3d at 1162-63, 1165-66 (discussing the Leasing Reform Policy). Therefore, compared to the Leasing Reform Policy at issue in *Zinke*, specific orders issued to Ovintiv, accrued liability for specific Leases and Wells, application of plugging liability to companies outside of the chain of title for the Leases, application of the

5

regulations under the challenged orders to Ovintiv, and liability to non-existent predecessors are further removed from the environmental concerns and policy interests at the center of CBD's advocacy efforts. *Compare id.* Accordingly, CBD's "record of advocacy" does not establish a sufficient interest in the "property or transaction in dispute." Fed. R. Civ. P. 24(a)(2).

### B. BLM Adequately Represents CBD's Interest In This Action

Even if CBD could demonstrate a cognizable interest in specific private lands, Wells, and terminated Leases at issue in this litigation, intervention remains improper because BLM adequately represents CBD's claimed interests. The strong presumption of adequate representation applies where, as here, an intervenor and the government share an identical litigation objective—defending the validity of an agency regulation. Further, CBD cannot rebut this presumption where: (1) the action presents a narrow legal challenge and does not require BLM to balance competing policy interests, (2) BLM shows no reluctance in vigorously defending the validity of its regulation, and (3) CBD lacks unique expertise on the issues presented in this action.

### 1. The presumption of adequate representation applies because CBD and BLM share identical litigation objectives

CBD contends that courts require a minimal showing of inadequate representation when a party seeks to intervene in support of federal agencies, because the government "is obligated to consider a broad spectrum of views." Doc. 6-1, p. 8. However, CBD misstates the law. *See San Juan County v. United States*, 503 F.3d 1163, 1205 (10th Cir. 2007) (abrogated on other grounds) (rejecting the argument that intervenors always bear "a minimal burden of showing inadequate representation by the government."). The Tenth Circuit presumes that representation is adequate "when the objective of the applicant for intervention is identical to that of one of the parties. *Id.* at 1204.

6

In cases involving the government, "this presumption should apply when the government is a party pursuing a single objective." *Id.* at 1204-05. Accordingly, the line of cases cited by CBD—in which courts accept a "minimal showing" of inadequate representation because "the government is obligated to consider a [broad] spectrum of views"—does not apply when the parties' interests are aligned. *Id.* at 1204; *Tri-State*, 787 F.3d at 1072. Instead, CBD must provide some concrete evidence that representation is inadequate to overcome this presumption. *Tri-State*, 787 F.3d at 1073.

Here, CBD's proposed intervention invokes this presumption, as it shares an identical litigation objective with BLM and seeks the same outcome—that is, defend the applicable regulations and hold predecessor lessees responsible for plug and abandonment obligations. *See San Juan County*, 503 F.3d at 1204 (holding that the presumption applied because the parties shared the single objective of defending exclusive titles to the roads at issue). Ovintiv can think of no circumstance where BLM's interest in defending its regulations would diverge due to countervailing interests, as the government maintains a unique interest in defending the validity of its own Written Orders, SDR Decision, INCs, and regulations. *See id.*

Although CBD argues that it seeks to protect its members, species, and ecosystems—while BLM defends this action based on a wide range of interests—Tenth Circuit courts have distinguished between parties' "objectives" and "motives" in pursuing litigation. *Tri-State*, 787 F.3d at 1072-73 ("Even though a party seeking intervention may have different 'ultimate motivations' from the governmental agency, where its objectives are the same, we presume representation is adequate."). Thus, while CBD's motives in defending the regulation may differ from BLM's, the parties share an identical goal in litigating this claim. As a result, the strong presumption of adequate representation applies.

### 2.  <u>CBD cannot rebut the presumption of adequate representation</u>

#### i.  The multiple use mandate does not apply in this case and BLM is not weighing multiple competing interests in litigating this action

CBD asserts that BLM cannot adequately represent its interests because the Secretary manages public lands under a "multiple use" mandate, which requires balancing a wide variety of interests. The multiple use mandate, contained in the Federal Land Policy Management Act, 43 U.S.C. §§ 1702(c) and 1712 ("FLPMA"), is inapplicable here. Ovintiv has not currently challenged BLM's applicable land use plan, any aspect of BLM's planning process, or the consistency of BLM's orders with the applicable land use plan. Instead, Ovintiv's claims fall squarely under the MLA and BLM's oil and gas regulations in 43 C.F.R. §§ 3106.72(b) and 3106.7-2(b).

Ovintiv's claims present narrow legal questions regarding the validity and permissible scope of BLM's SDR Decision, Written Orders, and INCs for liability under regulations and its statutory authority under the MLA. *Tri-State*, 787 F.3d at 1073. Thus, CBD's arguments on adequate representation tied to BLM's multiple use mandate are irrelevant.

#### ii.  Shifting executive priorities do not establish inadequate representation in this case

CBD further relies on changes in priorities under the current administration as evidence of inadequate representation. A change in administration is not applicable under the standards set forth in Rule 24, and CBD fails to sufficiently argue how the current administration's orders regarding energy and oil and gas changes the adequate representation analysis. As emphasized above, this case does not challenge a policy-based or discretionary leasing decision affected by shifting executive priorities. *See Tri-State*, 787 F.3d at 1073; *supra*, Part II.B.1 and II.B.2.i. Further, the executive order cited by CBD neither affects nor purports to diminish predecessor liability for plug and abandonment obligations. *See* Doc. 6-1, p. 8 (citing Exec. Order No. 14,154,

90 Fed. Reg. 8353 (Jan. 20, 2025)). Proposed intervenors cannot rely on other unrelated changes in executive policy across the entire energy sector; if viewed at this high level, courts will always find "shifting priorities" resulting in inadequate representation. *Oklahoma v. United States Dep't of the Interior*, 569 F.Supp.3d 1155, 1159 (W.D. Okla. 2021). Indeed, the argument that a change in administration favors intervention because the current administration favors deregulation and the oil and gas industry is unfounded. In this case, BLM is strictly enforcing obligations on an entity that never owned any interest in the Lease or Wells at issue. This is over-enforcement by BLM, not under enforcement; and this is most certainly not the rolling back of environmental regulations in favor of oil and gas exploration and production.

### iii.    Inadequate representation by BLM is entirely speculative

Further, movants cannot rely on "irrelevant speculation about and critiques of potential litigation strategies" nor "disagreement with the United States' land management decisions in the past." *Kane County v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010). Any suggestion that BLM may alter its position or mount an inadequate defense is wholly speculative, as BLM has displayed "no reluctance" in defending its orders to plug, or its regulation to hold prior lessees and their corporate successors accountable. *San Juan County*, 503 F.3d at 1206. Thus, CBD cannot rely on a speculative and hypothetical switch in litigation strategy from BLM. *See id.*

### iv.    CBD does not have a unique interest or expertise in the issues before the Court

Finally, where a case involves the question of whether the regulation is the proper exercise of authority granted to the Secretary by Congress, Respondent is in the best position to defend the legality of its own regulations and administrative authority. *See Tri-State*, 787 F.3d at 1074. This is not a case where the intervention applicants possess unique knowledge or expertise beyond that of the governmental agency. *See id.* Instead, the issues raised by Ovintiv turn solely on the review

9

of the specific orders, and because BLM exceeded its statutory and regulatory authority in issuing the specific orders.

### III.    CBD CANNOT MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(B)

For the same reasons described above, the Court should deny CBD's permissive intervention under Rule 24(b). Under Rule 24(b), the Court may grant permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

CBD has not alleged any involvement in the underlying Leases, Wells, or previous actions that gave rise to this suit. CBD has nothing to add to the record or arguments in this case because it does not concern BLM's decision-making process to issue new leases, amend or update its land use policy, or change the nature or scope of BLM's regulations. *Alameda Water & Sanitation Dist. v. Browner,* 9 F.3d 88, 91 (10th Cir. 1993) ("The opportunity to offer extraneous evidence beyond the administrative record, and thus beyond the scope of the narrow issue before the district court, is not an interest protectable in the underlying action . . . ."). This action will not involve the application of environmental laws or regulations that impact any of the stated interests of CBD.

Accordingly, CBD has failed to meet the standards for intervention under Rule 24(b).

### IV. CONCLUSION

CBD has failed to satisfy both the substantive and procedural requirements for intervention under Rule 24. *See* Fed. R. Civ. P. 24(a)(2), (b)-(c). Specifically, CBD asserts only generalized environmental interests unrelated to the specific Wells, Leases, or agency enforcement actions at issue, and its reliance on a generalized "record of advocacy" does not establish a legally protectable interest in this challenge. CBD and BLM also share an identical litigation objective, and there is no risk that countervailing interests will affect BLM's defense of its regulation.

10

Dated: April 7, 2026                                    Respectfully submitted,

                                                   **JONES WALKER LLP**

                                                   WILLIAM E. SPARKS
Wyoming Bar No. 6-4501
10001 Woodloch Forest Drive, Ste. 350
The Woodlands, TX 77380
Telephone: (281) 296-4552
Facsimile: (281) 296-4575
wsparks@joneswalker.com

*Attorney for Ovintiv Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to other participants in this case.

WILLIAM E. SPARKS

11